THOMAS MICHAEL KELLEY, PLAINTIFF v. FRANCESCA AGNOLI, DEFENDANT

No. COA09-179

(Filed 6 July 2010)

**1. Interlocutory Orders and Appeals— subject matter— appeal—not interlocutory**

Davis & Harwell's motion to dismiss plaintiff's appeal from the trial court's order awarding Davis & Harwell expenses for lost earnings and significant expenses under N.C.G.S. § 1A-1, Rule 45 was overruled. The trial court's order was not interlocu-

---

tory because at the time the order was entered, the underlying parties had entered into a consent agreement and there was no further action needed to settle and determine the entire controversy.

**2. Civil Procedure— compensation for lost earnings and significant expenses—after compliance with subpoena**

The trial court had the authority to award monetary compensation to Davis & Harwell for lost earnings and significant expenses pursuant to N.C.G.S. § 1A-1 Rule 45(c) *after* Davis & Harwell had complied with plaintiff's subpoena. At all times, plaintiff was on notice that there was an issue about the breadth of his subpoena and that Davis & Harwell intended to seek reimbursement for its expenses in responding to the subpoena.

**3. Civil Procedure— compensation for lost earnings and significant expenses—not a party to the litigation**

The trial court did not err in awarding monetary compensation to Davis & Harwell for lost earnings and significant expenses pursuant to N.C.G.S. § 1A-1 Rule 45(c) because Davis & Harwell was not a party to the underlying litigation. Plaintiff cited no authority suggesting that a party's law firm is itself a party to an action.

**4. Civil Procedure— compensation for lost earnings and significant expenses—subpoena unduly burdensome**

The trial court did not err in awarding monetary compensation to Davis & Harwell for lost earnings and significant expenses pursuant to N.C.G.S. § 1A-1 Rule 45(c) because under Rules 26(g) and 45(c)(1), it was the responsibility of plaintiff and his counsel to assess whether the subpoena served on Davis & Harwell was unduly burdensome.

**5. Civil Procedure— compensation for lost earnings and significant expenses—amount of award—findings of fact**

The trial court failed to address how it reached the conclusion that $40,000.00 was the appropriate sum for plaintiff to pay Davis & Harwell for lost earnings and significant expenses pursuant to N.C.G.S. § 1A-1 Rule 45(c). The matter was remanded to the trial court for further findings on the issue of the extent of reimbursement.

KELLEY v. AGNOLI

[205 N.C. App. 84 (2010)]

Appeal by plaintiff from order entered 23 October 2008 by Judge Edgar B. Gregory in Forsyth County Superior Court. Heard in the Court of Appeals 2 September 2009.

*Robinson & Lawing, LLP, by Michael L. Robinson and Michelle D. Reingold, for plaintiff-appellant.*

*Davis & Harwell, P.A., by Fred R. Harwell, Jr., Loretta C. Biggs, and Allison C. Wagner, for Davis & Harwell, P.A.*

GEER, Judge.

Plaintiff Thomas Michael Kelley appeals from an order requiring him to reimburse appellee Davis & Harwell, PA, a law firm that was representing Mr. Kelley's ex-fiancée in this litigation, for the lost earnings and expenses Davis & Harwell incurred in complying with the trial court's order compelling the firm to submit a privilege log and copies of documents requested in Mr. Kelley's subpoena duces tecum served on the firm. Considering the particular circumstances of this case—including the breadth of the subpoena, the number of times Mr. Kelley was warned that it was overly broad, and Davis & Harwell's status as a nonparty and existing counsel for Mr. Kelley's ex-fiancée— we conclude that the trial court properly determined that an award for lost earnings and significant expense was warranted under Rule 45(c)(1) and (c)(6) of the Rules of Civil Procedure. We must, however, remand for further findings of fact providing (1) the basis for the actual amount ($40,000.00) ordered and (2) the rationale why the court considered certain hours to be compensable under Rule 45.

Facts

Mr. Kelley filed this action against Francesca Agnoli in November 2007. Mr. Kelley's complaint contained the following allegations. On 31 December 2006, Mr. Kelley, a developer and businessman, and Ms. Agnoli, an unemployed Italian citizen, became engaged to be married. During their relationship, Mr. Kelley, approximately 20 years Ms. Agnoli's senior, paid several thousand dollars toward Ms. Agnoli's credit card debt, provided her with a monthly income, and made monthly deposits into a savings account—in her name—to be used by the couple to pay future marital expenses. Mr. Kelley also purchased a half-million dollar home and agreed to transfer legal title to the home to Ms. Agnoli.

In anticipation of the marriage, Mr. Kelley agreed to pay several law firms to negotiate and prepare an agreement between the couple.

KELLEY v. AGNOLI

[205 N.C. App. 84 (2010)]

Although Mr. Kelley alleged that he understood this document to be a premarital agreement, the final draft was entitled "Engagement Agreement" ("the Agreement"). Under the Agreement's terms, Mr. Kelley was obligated to support Ms. Agnoli for the rest of her life regardless whether they ever married. The couple signed the Agreement on 6 August 2007. Eventually, however, Mr. Kelley came to believe that Ms. Agnoli had never intended to marry him, but instead had merely manipulated him for personal gain. On 21 November 2007, Mr. Kelley filed a complaint asserting claims for fraud, constructive trust, resulting trust, and constructive fraud. He later amended the complaint to add claims for conversion and trespass to chattel.

On 25 and 28 January 2008, Mr. Kelley served subpoenas duces tecum on the lawyers and law firms that had represented Ms. Agnoli in preparing the Agreement. Included were Johnson Peddrick & McDonald, PLLC; Wells Jenkins Lucas & Jenkins, PLLC; John L. Barber of Wells Jenkins Lucas & Jenkins, PLLC; Womble Carlyle Sandridge & Rice, PLLC; Heather J. Bowen of Womble Carlyle; and Davis & Harwell, PA. The subpoenas requested the following from each law firm and lawyer:

> All documents regarding draft or final agreements between [Ms. Agnoli], on the one hand, and any third party individual or entity, on the other hand, including but not limited to all notes, correspondence, memoranda, emails, drafts or final agreements and documents concerning conversations with anyone regarding these matters.

> All documents regarding draft or final agreements between [Mr. Kelley] and [Ms. Agnoli] including but not limited to any documents concerning conversations with anyone regarding these matters.

Ms. Bowen and Womble Carlyle filed a general objection to the subpoena on the grounds of attorney-client privilege and/or the work product doctrine. Mr. Barber and Wells Jenkins moved to quash and modify the subpoena on similar grounds, describing it as "overly broad and unreasonable." Johnson Peddrick filed an objection to the subpoena also asserting the attorney-client and work product privileges.

Davis & Harwell's subpoena contained an additional request demanding that it produce

[a]ll documents regarding draft or final agreements between [Mr. Kelley], on the one hand, and *any third party individual or entity*, on the other hand, including but not limited to all notes, correspondence, memoranda, emails, drafts or final agreements and documents concerning conversations with anyone regarding these matters.

(Emphasis added.) At the time of service of the subpoena, Davis & Harwell was still representing Ms. Agnoli as counsel in this litigation.

On 4 February 2008, Davis & Harwell served an objection to the subpoena on the grounds of relevance, attorney-client privilege, work product, and undue burden and expense. Davis & Harwell specifically noted that the firm had represented Mr. Kelley's ex-wife during their divorce proceedings 15 years earlier and that the subpoena would improperly "encroach" upon those matters. Davis & Harwell contended that the subpoena constituted harassment and reserved the right to seek sanctions pursuant to Rule 45(c)(1) of the Rules of Civil Procedure.

On 19 February 2008, Mr. Kelley's attorneys met with attorneys at Davis & Harwell to discuss the subpoena and the law firm's objection. Davis & Harwell suggested to Mr. Kelley's counsel that the subpoena was extraordinarily broad and sought voluminous documents that were protected from discovery. Mr. Kelley's counsel indicated informally that he would not seek documents from Davis & Harwell regarding Mr. Kelley's ex-wife. Otherwise, Mr. Kelley's counsel did not indicate any willingness to modify or limit the scope of the subpoena.

On 28 March 2008, Mr. Kelley filed a motion to compel production of all the requested documents by most of the subpoenaed firms and lawyers, including Davis & Harwell. In support of the motion, he alleged that the requested documents were "relevant and properly discoverable" and that the "objections raised [were] without proper factual or legal basis."

The trial court held a hearing on Mr. Kelley's motion to compel on 8 April 2008.[1] With respect to Davis & Harwell, Mr. Kelley argued that he was entitled to discovery of all documents described in the subpoena without limitation. Davis & Harwell countered that all the documents were protected from discovery pursuant to Rule 26(b)(1) and

---

1. At about the time that Mr. Kelley's motion was set for hearing, Ms. Agnoli chose to change counsel for reasons having nothing to do with the facts and circumstances giving rise to the dispute between Mr. Kelley and Davis & Harwell. After Ms. Agnoli retained new counsel, Davis & Harwell was allowed by the trial court to withdraw.

(b)(3) of the Rules of Civil Procedure. Davis & Harwell further argued that compliance with the subpoena would impose an undue burden and expense on the firm because it would require a physical search of every case file opened by the firm since 1980. The firm explained that because of Mr. Kelley's extensive business dealings, his request— included only in the Davis & Harwell subpoena—for documents relating to agreements between Mr. Kelley and any third party (without any time limitation) required a search to determine whether any lawyer in the firm had previously had a representation relating to any transactions involving Mr. Kelley.

On 11 April 2008, the trial court granted Mr. Kelley's motion to compel production by ordering Davis & Harwell to produce, within 30 days, a privilege log numbering and describing each object covered by the subpoena that Davis & Harwell contended was privileged.[2] Davis & Harwell was also required to submit the material described on the privilege log in a sealed container for the court to inspect. The trial court reasoned that the "applicability of the attorney-client privilege had to be determined by the trial court, *not by the attorney*, based on an in camera review of the contested material."

The trial court stated that it would "conduct an in camera review of the documents on the privilege log and as to each document, make conclusions of law about whether the five elements of the attorney-client privilege exist or the protections of the work product doctrine applies [sic]." The court further concluded that "[t]he language in the subpoenas used by counsel for [Mr. Kelley was] overly broad and did include within its purview the possibility that one of the counsel who represented the ex-wife of [Mr. Kelley] would have to disclose matters completely unrelated to the issues involved in the case at bar."

Additionally, the trial court rejected Mr. Kelley's request for sanctions against Davis & Harwell based on the firm's failure to respond to the subpoena. The court explained that "opposition to the motion to compel was substantially justified such as to make an award of expenses unjust except for requiring [Ms. Agnoli] to pay the copying costs of the attorneys who [would] be required to submit a privilege log and related material." Each party was required to pay its own attorneys' fees and costs.

Before the trial court adjourned, Davis & Harwell asked the trial court to limit the order further. Although Mr. Kelley acknowledged to

2. We do not discuss the provisions relating to the other law firms since they are not material to this appeal.

the trial court that he "was not interested in" the materials related to his ex-wife, he never formally withdrew his request for this material. Davis & Harwell repeated its contention, on the record, that undue burden or expense would be imposed "even if [Mr. Kelley's] [s]ubpoena were limited in time to documents originated during or after 2006 because hundreds of case files would still need to be physically searched." The trial court did not, however, modify its order.

Davis & Harwell partially complied with the order on 9 May 2008 by submitting a 44-page privilege log and 2,394 accompanying pages of materials for inspection. Davis & Harwell has explained that in order to "mitigate undue burden and expense," it did not include any materials regarding Mr. Kelley's ex-wife and did not conduct a physical search of all its files.

Before the trial court completed its *in camera* inspection of the documents, Mr. Kelley's counsel mailed a letter directly to the trial judge, with copies to Davis & Harwell, criticizing Davis & Harwell's privilege log. Davis & Harwell responded with its own letter to the trial judge, with copies to opposing counsel, countering Mr. Kelley's arguments, urging the court to evaluate Mr. Kelley's conduct in light of Rule 11 of the Rules of Civil Procedure, and requesting compensation pursuant to Rule 45(c)(1) and (c)(6). Davis & Harwell also filed a written request for findings of fact and conclusions of law in the forthcoming order regarding the discoverability of the items contained in the privilege log.

On 9 July 2008, after the *in camera* inspection, the trial court entered an order that detailed its findings regarding Davis & Harwell's privilege log. The court determined that the documents itemized in the privilege log, with "very few exceptions," were accurately described as protected by either the attorney-client privilege, the work product doctrine, or both. The court did not find Davis & Harwell's privilege log "deficient in any material or significant manner." The court also agreed with Davis & Harwell that "the work product doctrine is a broader concept than that argued by" Mr. Kelley's counsel.

Additionally, in the 9 July 2008 order, the trial court announced that it would hold a later hearing to consider the question of compensation requested by Davis & Harwell. The trial court stated that it would address: (1) whether, under Rule 45(c)(1) and (c)(6), an undue burden or expense had been imposed on Davis & Harwell through having to compile the privilege log and comply with the 11 April 2008

**KELLEY v. AGNOLI**

[205 N.C. App. 84 (2010)]

order; (2) whether Mr. Kelley should be ordered to pay compensation, costs, or expenses to Davis & Harwell; and (3) if so, what would be reasonable compensation.

Before the hearing on compensation occurred, Davis & Harwell filed a "Time and Expense Line," in which it itemized its expenses. These included $9,170.00 for work related to the objection to the subpoena, the conference with Mr. Kelley's attorneys, the brief in opposition to the motion to compel production, and attendance at the 8 April 2008 hearing; $25,171.96 for work related to creating the privilege log and compliance letter and responding to Mr. Kelley's letter to the court; $18,732.10 for work related to a request for findings and conclusions; and $630.00 for work related to correspondence about the hearing. In sum, Davis & Harwell calculated that it had incurred an expense of $53,704.06 and had used 232.2 hours of labor.

The trial court held its hearing regarding the request for Rule 45 compensation on 12 September 2008. The court did not, however, enter its written order until 23 October 2008. Meanwhile, on 13 October 2008—10 days before the Rule 45 order was entered—Mr. Kelley and Ms. Agnoli signed and entered a consent judgment that resolved all outstanding issues between them.

In the Rule 45 order, filed 23 October 2008, the trial court concluded that Mr. Kelley owed Davis & Harwell "compensation for lost earnings incurred as a result of the issuance and service of [Mr. Kelley's] Subpoena and to protect Davis & Harwell from significant expense resulting from compliance with that Subpoena and the Order of this Court granting [Mr. Kelley's] MOTION TO COMPEL dated April 11, 2008." The court explained that it was "require[d]," under Rule 45(c)(1), "to enforce the provisions of that Rule which obligate the party or attorney responsible for the issuance and service of a subpoena to take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." The court also explained that it was "require[d]," under Rule 45(c)(6), "as a matter of law, to protect any person or party from significant expense resulting from complying with [a] subpoena." (Internal quotation marks omitted.)

Basing its decision "solely upon consideration of the record . . . , the evidence and materials presented, and the provisions of G.S. § 1A-1, Rule 26(b)(1), Rule 26(b)(3), Rule 45(c)(1), and Rule 45(c)(6)," the trial court found that Davis & Harwell had met its bur-

den of proof with respect to "lost earnings" under Rule 45(c)(1) and with respect to "significant expense" under Rule 45(c)(6). In reaching its decision to award compensation, the court noted that Mr. Kelley's subpoena "was not limited in time or by scope, source, or subject matter." The court also observed that, at the time the subpoena was served, Mr. Kelley and his counsel "had actual notice and knew in fact that attorneys at Davis & Harwell represented [Ms. Agnoli] in the lawsuit pending between [Mr. Kelley] and [Ms. Agnoli] with respect to which [Mr. Kelley's] Subpoena was issued." Further, despite having "had actual notice of the legal and practical necessity of taking reasonable steps to avoid imposing an undue burden or expense on Davis & Harwell," and despite being "capable" of taking such steps, Mr. Kelley and his counsel "failed to take reasonable steps to avoid imposing an undue burden or expense on Davis & Harwell."

The trial court found that the time Davis & Harwell spent on "compliance tasks" associated with the issuance of the subpoena and the order compelling production was not billable to any client, although that time, if not used for compliance, could have been used on billable matters and, consequently, amounted to lost income. According to the trial court, this "diversion of the time of Davis & Harwell employees from billable work" to "compliance tasks" was a "direct and proximate consequence of the issuance and service of [Mr. Kelley's] Subpoena."

In connection with this matter, Davis & Harwell had kept routine records of the time spent by employees working on the "compliance tasks." The court noted each of those employees' respective positions within the firm, the amount of time spent on the tasks, and the hourly billing rates. Specifically, the trial court found that attorney Fred R. Harwell, Jr. spent no less than 114.4 hours at a rate of $350.00 per hour; attorney Allison C. Wagner spent no less than 73 hours at a rate of $125.00 per hour; office manager Sharon Yount spent no less than 1.5 hours at a rate of $100.00 per hour; paralegal Carol G. Howell spent no less than 7.5 hours at a rate of $100.00 per hour; legal assistant Marion DelFavero spent no less than 18 hours at a rate of $65.00 per hour; and administrative assistant Tiffany B. Allen spent no less than 14.3 hours at a rate of $65.00 per hour.

The trial court determined that Mr. Kelley should not be required to pay the cost of lost earnings associated with preparation of Davis & Harwell's objection to the subpoena and its response to the motion to compel production. Those costs, the court found, amounted to no

more than $10,430.00. The trial court also did not require Mr. Kelley to pay for the copy expenses incurred in preparing the privilege log, as the trial court had already assigned those costs to Ms. Agnoli.

The trial court found that, based on Davis & Harwell's employees' education and experience, as well as the location of the firm, the employees' rates and time spent were "reasonable" and "customary" or "necessary." The court determined that Davis & Harwell had incurred lost earnings and significant expense "in an amount not less than" $40,000.00 as a result of Mr. Kelley's subpoena. The trial court, therefore, ordered Mr. Kelley to pay Davis & Harwell $40,000.00. The court did not explain how it arrived at that sum.

Mr. Kelley appealed from the trial court's 23 October 2008 order. Davis & Harwell moved to dismiss, arguing that this Court lacks subject matter jurisdiction.

## Motion to Dismiss Appeal

[1] In contesting this Court's subject matter jurisdiction, Davis & Harwell argues that Mr. Kelley has impermissibly appealed from an interlocutory discovery order that does not affect a substantial right. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). While ordinarily a discovery order is an interlocutory order because the lawsuit typically is still pending during the appeal from the order, the order in this case does not meet the definition of "interlocutory." At the time that the trial court entered the order, there was no further action necessary in order "to settle and determine the entire controversy." *Id.* The lawsuit had already been finally concluded.

We believe that *Long v. Joyner*, 155 N.C. App. 129, 574 S.E.2d 171 (2002), *disc. review denied*, 356 N.C. 673, 577 S.E.2d 624 (2003), controls on the issue whether the Rule 45 order may be appealed. In *Long*, the trial court imposed a sanction on the defendants for their repeated failure to comply with a discovery order. *Id.* at 133, 574 S.E.2d at 174. Afterwards, the parties reached a settlement regarding the underlying suit, and the defendants then appealed the sanction. *Id.* On appeal, this Court held that "[o]rdinarily, defendants' appeal from the sanction order would be dismissed as interlocutory. But here, the underlying legal issues in this case have been resolved by

KELLEY v. AGNOLI

[205 N.C. App. 84 (2010)]

the parties in a settlement agreement. The trial court's order appealed in this case constitute[d] the only unresolved issue in the case and therefore [was] appealable." *Id.* at 134, 574 S.E.2d at 175.

This case is on all fours with *Long*. Here, as in *Long*, the parties to the underlying case have settled their dispute through a consent judgment, and the trial court's order "constitutes the only unresolved issue in the case." *Id.* We note that the effect of Davis & Harwell's position would be to insulate the trial court's order from review. We can conceive of no justification for such a result. *See also Ariel v. Jones*, 693 F.2d 1058, 1059 (11th Cir. 1982) (holding appellate court had subject matter jurisdiction where appellant had "no other means of effectively obtaining review" where trial court had quashed subpoena of entity that was "not a party to the central action"); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 370 (9th Cir. 1982) (applying "collateral order doctrine" and holding order denying reimbursement for discovery expenses was appealable where no other unresolved issue of costs remained for appellant nonparties, order resolved issue collateral to underlying action, and court saw "no way that the [nonparties] could have protected themselves by appeal from the consent judgments eventually entered"), *cert. denied sub nom. CBS, Inc. v. Columbia Pictures Indus., Inc.*, 457 U.S. 1118, 73 L. Ed. 2d 1329, 102 S. Ct. 2929 (1982). We, therefore, deny Davis & Harwell's motion to dismiss.

<u>Order Awarding Compensation Under Rule 45</u>

[2] Mr. Kelley argues on appeal that the trial court abused its discretion by awarding $40,000.00 to Davis & Harwell for lost earnings and significant expense pursuant to Rule 45(c)(1) and (c)(6). Rule 45(c)(1), which is entitled "Protection of Persons Subject to Subpoena," provides:

(1) Avoid undue burden or expense.—A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

Rule 45(c)(6) further provides that "[w]hen a court enters an order compelling . . . the production of records, books, papers, documents,

or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena."

We have been unable to find any decision by North Carolina's appellate courts addressing Rule 45(c)(1) and (c)(6). In deciding the proper standard of review, we note that Rule 45(c)(1) provides that the trial court "shall" enforce the Rule and impose "an appropriate sanction" for a violation of the Rule, indicating that sanctions are mandatory if a party has not taken reasonable steps to avoid imposing undue burden or expense on the party subject to the subpoena. *See Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) ("It is well established that the word 'shall' is generally imperative or mandatory." (internal quotation marks omitted)). Likewise, the language in Rule 45(c)(6) providing that the trial court "shall protect" the party producing documents from "significant expense" is mandatory.

On the other hand, reference to an "appropriate sanction" and the subsequent provisions that such a sanction "may" include compensation for lost earnings and for reasonable attorney's fees suggests that the nature of the sanction rests within the discretion of the trial court. *See Baker v. Rosner*, 197 N.C. App. 604, 606, 677 S.E.2d 887, 889 ("Determining which sanctions are appropriate under Rule 37 [of the Rules of Civil Procedure] is within the sound discretion of the trial court."), *disc. review denied*, 363 N.C. 744, 688 S.E.2d 452 (2009).

Rule 26(g) of the Rules of Civil Procedure contains almost identical language. Rule 26(g) provides that a signature on a discovery request, response, or objection certifies, among other things, that the request, response, or objection is "not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." The rule then states that, upon the finding of a violation of this requirement, the trial court "shall impose . . . an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.*

This Court has construed this language as meaning that if the trial court "finds that Rule 26(g) was violated, it must impose an appropriate sanction as directed by the statute." *Williams v. N.C. Dep't of Corr.*, 120 N.C. App. 356, 363, 462 S.E.2d 545, 549 (1995). On the other hand, "[t]he trial court's decision regarding sanctions will only be

overturned on appeal upon showing an abuse of that discretion." *Id.* at 359, 462 S.E.2d at 547.

Based on the language of Rule 45(c) and *Williams'* interpretation of the similar language contained in Rule 26(g), we hold that if a trial court finds a violation of Rule 45(c)(1), it must impose an appropriate sanction. The nature of that sanction, however, rests within the discretion of the trial court and will not be reversed on appeal without a showing of an abuse of discretion. On the other hand, the trial court, in granting a motion to compel under Rule 45(c)(6), is required to protect the party producing documents from "significant expense." *See also In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) ("The mandatory language of this Rule [45] represents a clear change from old Rule 45(b), which gave district courts *discretion* to condition the enforcement of subpoenas on the petitioner's paying for the costs of production.").[3]

Mr. Kelley first contends that "Rule 45(c)(1) controls *prior* to seeking a court order and Rule 45(c)(6) is a tool for the court to use to prevent significant expenses and undue burden prior to production of documents. Neither subsection of the rule should be applied *after* a court affirmatively orders production of discovery." This view has, however, been specifically rejected with respect to Rule 45 of the Federal Rules of Civil Procedure.

A leading commentator regarding the Federal Rules has explained the "protection" mandated by Rule 45: "The district court is not obligated to fix the costs in advance of production, although this often will be the most satisfactory accommodation between imposing expense on the subpoenaed party while protecting the party seeking discovery from excessive costs by way of an award under the rule. In some instances, it may be preferable to leave the matter uncertain, determining costs after the materials have been produced, provided that the risk of this uncertainty is disclosed fully to the discovering party." 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2463 (3d ed. 2008).

We find persuasive the Ninth Circuit Court of Appeals' decision in *Columbia Broadcasting* addressing this issue. In *Columbia*

---

3. "Because of the dearth of North Carolina precedent" concerning the payment of compensation pursuant to Rule 45(c)(1) and (c)(6), and the fact that this rule closely resembles Rule 45 of the Federal Rules of Civil Procedure, "we look to federal decisions interpreting this section for guidance." *Keith v. Day*, 60 N.C. App. 559, 560-61, 299 S.E.2d 296, 297 (1983).

KELLEY v. AGNOLI

[205 N.C. App. 84 (2010)]

*Broadcasting*, five nonparty television studios were subpoenaed by two television networks "to produce massive quantities of documents"—material that covered a span of more than 20 years. 666 F.2d at 365. The studios filed a motion to quash the subpoenas in which they "expressly 'reserved' the right to seek reimbursement of discovery costs if production was ordered." *Id.* at 366. The district court enforced most of the subpoenas, but did not address the question of the potential cost of reimbursement. *Id.* After the studios turned over all the subpoenaed material, they sought over $2 million in reimbursement for "out-of-pocket costs they allegedly incurred in complying" with the subpoenas. *Id.* The district court denied their requests without explaining why. *Id.* at 366-67.

On appeal, the Ninth Circuit, in response to the networks' argument that the district court lacked authority to award reimbursement of costs after production of the documents, held:

Given that the studios expressly reserved their right to seek reimbursement and kept the court and networks fully informed of their progress and expenses throughout the lengthy production process, we discern nothing in Rule 45 that precludes post-compliance reimbursement of costs. The networks were on notice throughout the production process that the studios intended to seek reimbursement and they could easily have modified or limited their discovery demands whenever they felt that their exposure to potential reimbursement exceeded the value of requested material. Accordingly, we have little sympathy on the facts of this case for the networks' lament that deferral of a Rule 45(b)(2) determination until after compliance with a subpoena may result in grave injustice by visiting liability for costs on parties, who cannot then escape the consequences.

*Id.* at 368. In holding that Rule 45 authorized the district court to award reimbursement, the Ninth Circuit recognized that "Rule 45 discloses a 'broad congressional judgment with respect to fairness in subpoena enforcement proceedings.' " *Id.* (quoting *United States v. Friedman*, 532 F.2d 928, 937 (3rd Cir. 1976)). The Court observed that, "[c]onsistent with this purpose, the Rule has been used creatively to require interim reimbursement and reimbursement of costs at the conclusion of discovery." *Id.*

Adopting the reasoning of *Columbia Broadcasting*, we reject Mr. Kelley's contention that the trial court was prohibited from requiring him to compensate Davis & Harwell *after* Davis & Harwell had com-

plied with the trial court's order on the motion to compel. Although Mr. Kelley points to the fact that the trial court granted his motion to compel and did not quash the subpoena, the facts in this case are virtually identical to those in *Columbia Broadcasting* in which the Ninth Circuit concluded that the district court had authority to award reimbursement.

At all times, Mr. Kelley was on notice that there was an issue about the breadth of his subpoena and that Davis & Harwell intended to seek reimbursement for its expenses in responding to the subpoena. Davis & Harwell filed an objection to the subpoena that, among other things, argued the subpoena was unduly burdensome and it reserved the right to seek reimbursement for expenses. When Mr. Kelley's attorneys met with attorneys from Davis & Harwell to attempt to resolve the objection, Davis & Harwell explained the problem with the subpoena's breadth. At the hearing on the motion to compel, Davis & Harwell argued undue burden and asked that Mr. Kelley limit the scope of the subpoena, but Mr. Kelley did not expressly do so even though his counsel acknowledged that they would not need any materials relating to Mr. Kelley's ex-wife.

Although Mr. Kelley repeatedly asserts that the trial court approved the subpoena by granting his motion to compel, the language of the order itself is to the contrary. The trial court did grant the motion to compel to the extent that Davis & Harwell was required to produce a privilege log and those documents claimed to be privileged for an *in camera* review. Nothing in the court's order, however, indicated a wholesale approval of the breadth of Mr. Kelley's subpoena. Instead, the court expressly concluded that "the language in the subpoenas used by counsel for [Mr. Kelley was] overly broad . . . ." Ultimately, in essence, the court told Mr. Kelley that he could have the documents if he wanted them, but he would have to pay for them.

Thus, as was the case in *Columbia Broadcasting, id.*, Mr. Kelley was "on notice throughout the production process that [the recipient of the subpoena] intended to seek reimbursement and [he] could easily have modified or limited [his] discovery demands whenever [he] felt that [his] exposure to potential reimbursement exceeded the value of requested material." Yet, Mr. Kelley chose not to do so. Consequently, we hold that the trial court had authority to award compensation for lost earnings and expenses after Davis & Harwell had complied with the subpoena.

**[3]** Mr. Kelley next contends that Rule 45's protection should not apply to Davis & Harwell because it is intended to protect nonparties and, according to Mr. Kelley, Davis & Harwell did not become a nonparty until it withdrew from representing Ms. Agnoli, two months after service of the subpoena. We agree with Mr. Kelley that "nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party." *Columbia Broadcasting*, 666 F.2d at 372. As *Columbia Broadcasting* explains, protection of subpoenaed nonparties is necessary because they are "powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *Id.* at 371. *See also Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) ("The status of a witness as a nonparty entitles the witness to consideration regarding expense and inconvenience."), *aff'd*, 200 F.3d 814 (5th Cir. 1999).

Davis & Harwell, however, was never a party. Our Supreme Court specifically held in *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000), that the Attorney General, who had represented the State in a class action, was not a party in the case and, therefore, could not individually appeal from the trial court's award of attorney's fees to counsel for the class. Mr. Kelley has cited no authority suggesting that a party's law firm is itself a party, and we know of none. Indeed, we believe that service of a subpoena on the attorneys representing a party in the pending litigation is an extraordinary act that may warrant greater scrutiny and protection from the court and not less.

**[4]** Mr. Kelley further argues that it is inappropriate to sanction him when he fully complied with the procedures for discovery set out in the Rules of Civil Procedure and, by filing a motion to compel, "sought guidance from the court to determine the appropriateness of the subpoena issued." He asserts: "His one mistake was that he relied on the court to quash the subpoena if it was unreasonable and oppressive and compel discovery if the subpoena was appropriate."

This argument disregards Mr. Kelley's obligations under Rule 26(g) and Rule 45(c)(1). By signing the subpoena, Mr. Kelley's counsel certified, pursuant to Rule 26(g), that the subpoena was "not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." Further, Rule 45(c)(1) places an affirmative duty on the attorney serv-

ing the subpoena to "take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."

The obligations set out in Rule 26(g) and Rule 45(c)(1) existed at the time Mr. Kelley's attorney signed the subpoena. It was the responsibility of Mr. Kelley and his counsel to assess, in the first instance, whether the subpoena was unduly burdensome. They could not delegate their responsibility for making this determination to the trial court. Indeed, given the requirements of Rule 26(g) and Rule 45(c)(1), we do not see how Mr. Kelley has any grounds for complaining about the trial court's granting his motion to compel. The trial court simply granted Mr. Kelley what his counsel certified was (1) needed and (2) not unduly burdensome. It was up to Mr. Kelley to determine whether the documents were important enough to him to warrant having to pay the expenses of gathering them.[4]

Significantly, apart from pointing to the trial court's granting of his motion to compel, Mr. Kelley makes no attempt to justify the breadth of the subpoena served on Davis & Harwell. Our review of that subpoena supports the trial court's ultimate determination in the order on appeal that the subpoena was unduly burdensome.[5] Accordingly, we hold that the trial court properly determined that an award of sanctions/compensation was mandated by Rule 45(c).

We acknowledge that judicial economy might have been better served had the trial court, in its order on the motion to compel, (1)

---

4. Mr. Kelley also asserts that his counsel's meeting with Davis & Harwell, as required, to discuss the objection shows that he complied with Rule 45. Further, he asserts that, "[c]ontrary to the Order, Appellant's counsel repeatedly narrowed the scope of requested documents." The record, however, supports a finding that, despite the mandatory meeting and subsequent acknowledgments that documents relating to the ex-wife were not needed, Mr. Kelley never actually limited the subpoena and never even acknowledged the large number of other irrelevant documents falling within the scope of the subpoena.

5. Mr. Kelley challenges the trial court's conclusions of law that he sought production of materials that were not relevant and that his subpoena was overly broad as a matter of law. While he argues that the conclusions of law were not supported by any findings of fact, the trial court's findings of fact amply reveal the improper breadth of the subpoena, including finding of fact 11: "Plaintiff's subpoena sought production from Davis & Harwell of 'all documents regarding draft of final' (1) agreements between Plaintiff and Defendant, (2) agreements between Defendant and anyone in the world, and (3) agreements between Plaintiff and anyone in the world. Plaintiff's Subpoena was not limited in time or by scope, source, or subject matter. Plaintiff's Subpoena generically detailed the various documents and things sought and contained such descriptive phrases as 'including but not limited to all notes, correspondence, memoranda, emails, drafts or final agreements and documents concerning conversations with anyone regarding these matters.' "

more specifically addressed the scope of the subpoena apart from questions of privilege, (2) denied the motion to the extent it sought documents not relevant to this case, and (3) expressed its intent to protect Davis & Harwell from significant expense. Nonetheless, under the circumstances of this case and considering the reasoning in *Columbia Broadcasting*, which we find persuasive, we hold that the trial court did not err in imposing sanctions and awarding compensation after Davis & Harwell had complied with the order granting the motion to compel.

[5] The question remains, however, whether the trial court abused its discretion with respect to the amount ordered paid: $40,000.00. *See Exxon Valdez*, 142 F.R.D. at 383 ("However, 'protection from significant expense' does not mean that the requesting party necessarily must bear the *entire* cost of compliance . . . ."). As the court in *Exxon Valdez* explained, "a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *Id.* Mr. Kelley has not identified any "equities" suggesting that Davis & Harwell should share the burden of the costs of production. *Id.* at 383. Mr. Kelley does, however, argue that the trial court abused its discretion in ordering Mr. Kelley to reimburse Davis & Harwell for certain tasks.

It is well established that "[o]nly if the trial court includes findings of fact regarding *how* it came to choose the particular sanction imposed can this Court determine whether or not the sanction represents an abuse of discretion." *Dunn v. Canoy*, 180 N.C. App. 30, 50, 636 S.E.2d 243, 256 (2006) (emphasis added), *appeal dismissed and disc. review denied*, 361 N.C. 351, 645 S.E.2d 766 (2007). Here, despite acknowledging Davis & Harwell's employees' billing rates and time spent and despite categorizing reimbursable and non-reimbursable costs, the court failed to address how it reached the conclusion that $40,000.00 was the appropriate sum for Mr. Kelley to pay Davis & Harwell. The court simply found, without further explanation, that Davis & Harwell incurred "lost earnings" and " 'significant expense resulting from complying with' " the subpoena in an amount "not less than Forty-Thousand Dollars ($40,000)."

After reviewing the record, we simply cannot tell where the $40,000.00 came from. Davis & Harwell's "Time and Expense Line" does not include any categories of tasks that, when totaled, would equal $40,000.00. Although the trial court stated that it was not requiring Mr. Kelley to pay the cost of lost earnings associated with the preparation of Davis & Harwell's objection to the subpoena and re-

sponse to the motion to compel production, we do not know exactly what was included as compensable compliance tasks.

Mr. Kelley argues that the time spent on Davis & Harwell's 85-page request for findings of fact and conclusions of law, filed on its own initiative, should not be included as lost earnings. It appears from the trial court's findings that the trial court may have included this time in its award because it viewed the request as being responsive to Mr. Kelley's counsel's 14 May 2008 letter to the trial court. Given, however, the findings of fact related to this document, we cannot tell for sure whether the trial court ordered reimbursement of this time because it viewed the task as one of the burdens associated with compliance with the subpoena or whether the trial court was, in actuality, sanctioning other behavior it viewed as improper. *See Dunn*, 180 N.C. App. at 46-47, 636 S.E.2d at 253-54. We, therefore, cannot determine whether the trial court properly required Mr. Kelley to pay for this time under Rule 45.

Accordingly, although we affirm the trial court's decision that Davis & Harwell was entitled to reimbursement for lost earnings and significant expense, we must remand for further findings on the issue of the extent of reimbursement. On remand, the trial court must explain how it calculated the compensation owed to Davis & Harwell, including what tasks were included as resulting from compliance with the subpoena and why. On remand, the trial court is not required to order the same amount of sanctions or compensation. If the trial court determines a different amount is proper, based upon findings made in accordance with this opinion, it should enter the new order for that amount.

Affirmed in part; remanded in part.

Judges STROUD and ERVIN concur.